■ BROADVIEW INTERNATIONAL LLC, Respondent, v COMMISSIONER.COM, INC., Appellant. [793 NYS2d 22]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered April 22, 2004, which granted plaintiff financial adviser's motion for summary judgment on the issue of defendant's liability for breach of the subject engagement agreement, and dismissed defendant's counterclaims for return of some money already paid plaintiff pursuant to that agreement, unanimously affirmed, with costs.

We reject defendant's argument that the engagement agreement is illusory in that plaintiff's only articulated obligation thereunder was to assist defendant's predecessor in "negotiating and structuring" the transaction that resulted in the predecessor's merger into defendant, an entity newly formed as an arm of the nonparty acquiring company. The agreement, by expressly leaving the predecessor free to reject any proposals or offers, effectively left it up to the predecessor to determine the nature and extent of plaintiff's performance. Whatever plaintiff's obligations, the predecessor's shareholders were apparently satisfied with its performance, since it was immediately paid the larger, "up-front" portion of its fee, a stipulated 2% of the consideration received at the merger's closing, which consisted of $4 million in cash and approximately $29 million in the acquiring company's restricted shares of stock. The remainder of plaintiff's fee, the subject of the instant action,

was contingent upon the payment of an "Earn Out" of up to $12 million by the acquiring company to the predecessor's shareholders, which itself was contingent upon a positive performance by defendant in its first year of operations. The merger closed in December 1999, and by December 2001, when the restrictions on the transfer of the acquiring company's shares ended, the shares were worth very little. Only then did defendant find plaintiff's obligations to be illusory.

We also reject defendant's argument that the engagement agreement was unconscionable in that, among other things, while the initial draft thereof prepared by plaintiff provided for a fee of 2% of the first $100 million in consideration, the final agreement, reflecting a proposal made by the predecessor intended to encourage plaintiff to obtain the highest amount possible, provided for 2% of the first $35 million and 5% of any amount over $35 million. If, as defendant asserts, plaintiff initially projected consideration of $35 to 50 million, then, given the $33 to 45 million consideration that was ultimately negotiated, the predecessor's proposal evinced neither naivete on its part nor overreaching on plaintiff's part. The restricted shares, presumably, could have gone up as well as down, but even if their acceptance were imprudent, under applicable New Jersey law, that is hardly enough to show unconscionability (*see Howard v Diolosa*, 241 NJ Super 222, 230-231, 574 A2d 995, 999-1000 [Super Ct, App Div 1990], *cert denied* 122 NJ 414, 585 A2d 409 [1990]).

While it is true, as defendant argues, that the engagement agreement precludes plaintiff's recovery of a fee based on "normal compensation" of the predecessor's shareholders as employees of the acquiring company, it is not true that the Earn Out is "normal compensation." No ambiguity exists in this regard. The merger agreement describes the Earn Out as "additional merger consideration." The engagement agreement includes in plaintiff's fee base "contingent consideration and other post-closing payments (excluding normal compensation for employment post-closing)." Concur—Buckley, P.J., Tom, Andrias, Friedman and Sullivan, JJ.